**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GERALD BUSH, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 18-5659 |
| PHILADELPHIA REDEVELOPMENT, | : | |
| AUTHORITY, et al., | : | |
| *Defendants.* | : | |

**JONES, II   J.**                                                    **AUGUST 29, 2019**

<u>**MEMORANDUM**</u>

Plaintiff Gerald Bush brings the above-captioned action pursuant to 42 U.S.C. § 1983 for

the alleged illegal taking of his purported residence located at 5108 Chester Avenue,

Philadelphia, Pennsylvania (the "Property").  More specifically, Plaintiff has set forth federal

claims under the Takings Clause of the Fifth Amendment, 5 U.S.C. § 552 of the Freedom of

Information Act ("FOIA"), 26 U.S.C. § 6323 of the Internal Revenue Code (the "Tax Code"), 28

U.S.C. § 2409 of the Quiet Title Act, and 28 U.S.C. § 2412.  Plaintiff has also raised claims

under Pennsylvania state law for fraud, breach of contract, violation of Rule 3113 of the

Pennsylvania Rules of Civil Procedure, and violation of 42 Pa.C.S. § 5527.3, seeking

compensation for lost property, reimbursement for work completed by him on the Property, and

deprivation of his civil rights (ECF No. 2, p.8).[1]

Pending before the Court is Plaintiff's Emergency Petition for a Preliminary Injunction

(the "Emergency Petition") (ECF Nos. 17, 20, 21), Defendants Philadelphia Redevelopment

Authority, Christi M. Jackson, and Robert Labrum's (collectively, the "Defendants") Opposition

---

[1] When citing to filings of record the Court will use the ECF pagination unless otherwise noted.

thereto (ECF No. 27), Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion to Dismiss") (ECF No. 26), and Plaintiff's Opposition thereto (ECF No. 29). For the reasons set forth below, the Court shall deny the Emergency Petition and grant the Motion to Dismiss for lack of subject matter jurisdiction. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims and this case shall be dismissed with prejudice.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's Complaint is a compilation of documents including: (1) filings in various actions initiated in the Philadelphia Court of Common Pleas, (2) excerpts from statutes, (3) a form letter including an account statement from Philadelphia Gas Works for the Property from January 1, 2002 through October 11, 2018,[2] (4) a form letter from PECO Customer Service confirming the establishment of an account by Plaintiff on April 1, 2001, (5) valuations of the Property from 2013 until 2019 from an online website, (6) correspondence directed to Plaintiff's attention demanding that he vacate the Property, (7) correspondence regarding Plaintiff's attempt to seek what he would deem an appropriate resolution of the alleged illegal taking of the Property, and (8) correspondence pertaining to Plaintiff's Right-to-Know request for documents under Pennsylvania's Right-to-Know-Law, 65 P.S. §§ 67.101, *et seq.* (*See* ECF Nos. 1, 3, 4, 9). Given Plaintiff's *pro se* status, the Court has done its best to distill what could reasonably be construed as factual allegations from these documents and construed them in Plaintiff's favor.

---

[2] Transactions on this statement are dated February 12, 2002 through an unreadable date in 2004.

However, given Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, or Alternatively, for Failure to State a Claim ("Motion to Dismiss") the Court will also set forth the facts as presented by Defendant because it is Plaintiff's burden to establish jurisdiction.

### A. **Plaintiff's Factual Allegations**

Plaintiff allegedly obtained possession of the Property pursuant to an agreement between he and the City of Philadelphia under an abandonment/abatement program. (ECF No. 4, p. 2).[3] Plaintiff claims he spent $66,000 to purchase the Property. (*Id*.).[4] Plaintiff also claims there is an email confirming his purchase or the City of Philadelphia's "promise of ownership," and he alleges that he:

> had an agreement with the City of Philadelphia abandonment/abatement program and was assured ownership through this agreement[.] . . . The extent and nature of the agreement is in the form of an e-mail dated June 1, 2018 to Gregory Heller of the PRA. The contract is in electronic form due to the file room not being able to locate the contract that was made in 2002 or 2003. . . .

(ECF No. 4, pp. 8-9; *see also* ECF No. 3, p. 2).[5] Plaintiff has identified the relevant email as being from Paulette Adams, Director of Community Development in the Office of

---

[3] Plaintiff appears to use the City of Philadelphia and City Council interchangeably with respect to the entity with which he had the alleged agreement. (*Compare* ECF No. 4, p. 2, *with* ECF No. 9, p. 3; *compare* ECF No. 4, p. 2 *with* ECF No. 26-2, Ex. K at 75-76 and ECF No. 26-2, Ex. L at 85).

[4] A letter from Jannie L. Blackwell dated November 21, 2018 states that Plaintiff "claims to have paid $12,000 to a previous owner who allegedly sold the property to the RDA." (ECF No. 4, p. 17).

[5] Plaintiff filed a Motion to Accept E-Mail as Proof of a Contract, which requested that the Court find that this e-mail exchange between Mr. Heller and Ms. Adams constituted proof of conveyance of the Property to Plaintiff. (ECF No. 3). The Court denied the Motion. (ECF No. 6).

Councilwoman Jannie L. Blackwell, to Greggory Heller, Executive Director of the Philadelphia Redevelopment Authority, written on June 1, 2018 with a subject line of "5108 Chester Avenue," wherein Ms. Adams stated:[6]

> I need to resolve the situation with this property. Mr. Gerald Bush has been in this property for 14 years. Sandy Hayes, my predecessor, worked with Mr. Bush through the abandonment/abatement program. He was assured ownership through this arrangement."

(ECF No. 4, p. 4). Later that day, Mr. Heller responded: "Let me look into this and get back to you early next week." (*Id.*)

Plaintiff asserts that in addition to the emails between Ms. Adams and Mr. Heller (the "Adams/Heller Email"), additional evidence of his ownership of the Property includes the fact that he has maintained, improved, repaired, and renovated the Property for the past seventeen (*see* ECF No. 4, p. 9) or eighteen years and has paid other expenses on the Property. (ECF No. 4, p. 18; *see also* ECF No. 9, p. 3). However, Plaintiff also alleges that he took these actions pursuant to a contract entered into by him in 2003 with Sandy Hayes, Councilwoman Blackwell, and Ms. Adams, wherein he agreed to make all necessary repairs on the Property.[7] (ECF No. 3, p. 3; *see also* ECF No. 9, p. 3). After completing work under this alleged agreement for fourteen years, Plaintiff claims he unsuccessfully sought reimbursement for his efforts, but it is not clear from whom. (*See* ECF No. 9, p. 3).

---

[6] Plaintiff filed a Motion to Accept E-mail as Proof of a Contract with respect to this e-mail (ECF No. 3), which the Court construed as an exhibit to the Complaint (ECF No. 6). Plaintiff then filed a Motion to Amend Contract (ECF No. 9), which the Court will also construe as an exhibit to the Complaint despite Plaintiff's failure to comply with this Court's Order docketed July 3, 2019. (ECF No. 14).

[7] Plaintiff does not allege expressly whether he agreed to make these repairs in exchange for compensation, transfer of the Property, or some other consideration. (*See* ECF Nos. 4, 9).

Finally, Plaintiff claims that despite his alleged ownership of the Property, Defendants have attempted to have him vacate the Property since May 27, 2009, without any legal basis. (*See* ECF Nos. 4, pp. 11-16, 23). At some point, which was not made clear by Plaintiff, he claims that the City of Philadelphia or Defendant PRA filed a "false petition in order to take property [sic] from the plaintiff," namely, the residence located at 5108 Chester Ave, Philadelphia, PA. (ECF No. 4, pp. 1-2).[8] Plaintiff also claims that Defendant PRA also interfered with his agreement with the City of Philadelphia/City Council – whether for the sale of the Property or for reimbursement for the work he performed on the Property is unclear – and that the City of Philadelphia/City Council breached the agreement by trying to sell the Property to another individual, as evidenced by a letter of support from Ms. Blackwell to Mr. Heller regarding the application of a Ms. Atema Addy to acquire the Property. (ECF No. 9, p. 6; *see also* ECF No. 3, p. 4).[9] According to Plaintiff, these alleged actions constitute fraud, or at least, a failure to adequately investigate the ownership of the Property. (ECF No. 4, p. 2).[10]

### B. **Defendants' Factual Allegations**

Defendant PRA claims to have owned the Property since April 14, 2003 when it filed a Declaration of Taking pursuant to former Pennsylvania Eminent Domain Code, 26 P.S. §§1-101,

---

[8] The Court believes Plaintiff is referring to the Declaration of Taking filed in the Philadelphia Court of Common Pleas by the Redevelopment Authority of the City of Philadelphia in an eminent domain action for the Property; Case Number 030401046. Defendant Philadelphia Redevelopment Authority ("Defendant PRA") was formerly known as the Redevelopment Authority of the City of Philadelphia. (ECF No. 26-2, Ex. I at p. 69).

[9] Plaintiff does not state whether Defendant interfered with his alleged agreement with the City of Philadelphia/City Council to repair the Property, purchase the Property, or some combination of the two.

[10] Plaintiff listed Defendants Christi M. Jackson and Robert Labrum as being involved in the action, but does not set forth any specific facts with respect to either individual.

*et seq*., as amended ("Declaration of Taking"), which was supported by an affidavit by Herbert
E. Wetzel, the Philadelphia Redevelopment Authority's Executive Director. (ECF No. 26-1,
p. 2; ECF No. 26-2, Ex. A). Defendant PRA's Declaration of Taking afforded it a fee simple
interest in the Property and other areas identified as blighted and condemned pursuant to
Resolution No. 17,168, which was passed by Defendant PRA on April 8, 2003. (ECF No. 26-2,
Ex. A, ¶¶ 3, 4, 6; *see also* pp. 5-9). Defendant PRA also filed a Notice of Condemnation in
accordance with § 404 of the Pennsylvania Eminent Domain Code, which was executed by
Nicholas Dema, Jr., Defendant PRA's then Director of Housing, and Mr. Wetzel.

According to the documents supporting the Declaration of Taking, as of April 14, 2003
Michael James was the owner, condemnee, or grantor of the Property to Defendant PRA. (ECF
No. 26-2, p. 17). Mr. James came into ownership of the Property on October 17, 2001 when the
deed for the Property he purchased from Troy Prater for $40,000, was recorded by the
Commissioner of Records for the City of Philadelphia. (ECF No. 26-2, Ex. C). A search of the
website for the Recorder of Deeds shows that Mr. Prater had owned the Property since
September 3, 1997 and Plaintiff was not among one of the owners prior to that date.[11] (ECF No.
26-1, p. 3; *see also* ECF No. 26-2, Ex. D).

According to Defendants, despite Defendant PRA being the record fee holder of the
Property since April 14, 2003, Plaintiff, "[w]ithout the [Defendant PRA's] knowledge, consent,
or permission, . . . trespassed on the Property, [and] has allegedly been performing repairs on the
Property." (ECF No. 26-1, p. 3). Defendants also believe that Plaintiff has been renting the
Property for some unknown amount of time due to contact by one of Plaintiff's alleged tenants in

---

[11] The search of the website for the Recorder of Deeds went back to October 5, 1977.

the Spring of 2018, stating she'd been locked out of the Property by Plaintiff and was being denied access to her belongings. (ECF No. 26-1, p. 3). Since May 27, 2009 Defendant PRA has sent multiple notices to Plaintiff demanding that he vacate the Property, but he not only refuses to comply, he "interferes with the [Defendant PRA's] entry into the Property." (ECF No. 26-1, p. 3).

### C. **Procedural History**

#### 1. State Court Actions

On April 14, 2003, Defendant PRA initiated an eminent domain action in the Philadelphia Court of Common Pleas, Case No. 030401046 (the "Eminent Domain Action"), by filing a Declaration of Taking. (ECF No. 26-2, Ex. A at 2-3). In support, Defendant PRA: (1) set forth in the Declaration of Taking the name and address of the condemnor; (2) identified §§ 9(i) and 12 of the Pennsylvania Urban Redevelopment Law of May 24, 1945, P.L. 991, as amended and supplemented, which authorized the condemnation of the Property (ECF No. 26-2, Ex. A, at 2); (3) filed Resolution No. 17, 168 (ECF No. 26-2, Ex. A, at 5) authorizing the Declaration of Taking; (4) explained that the purpose of the taking was to "acquire and replan the blighted area" described in the attached Ex. A for commercial, residential, and related uses (ECF No. 26-2, Ex. A, at 2-3); (5) filed a Notice of Condemnation and Condemnation Plan stating where the condemned area was located and could be inspected (ECF No. 26-2, Ex. A, at 3; Ex. B); (6) described the nature of the title acquired as "an absolute and fee simple title, including all easements, rights-of-way, and the real property interests of whatever nature" (ECF No. 26-2, Ex. A, at 3); and (7) filed a Bond securing just compensation for the Property (ECF No. 26-2, Ex. A, at 10-11).

Several years later, on October 15, 2018, Plaintiff filed an action to quiet title in the Philadelphia Court of Common Pleas against Defendant PRA due to an alleged fraudulent conveyance; Case No. 181001778. (ECF No. 26-2, Exs. G, H). In a sworn complaint, Plaintiff alleged that he "spent 16 years repairing an abandoned property" located at 5018 Chester Ave., Philadelphia, Pennsylvania and that Defendant PRA "refuse[d] to pay for labor cost for 16 years." (ECF No. 26-2, Ex. G at 2-3). Plaintiff alleged that Ms. Adams and Councilwoman Blackwell had proof of his work that included pictures. (ECF No. 26-2, Ex. G at 3). As relief, Plaintiff claimed that he "want[ed] title due to 16 years of labor." (*Id.*).

Defendant PRA responded by filing a counterclaim against Plaintiff seeking an injunction, ejectment order, and monetary damages. (ECF No. 26-1, p. 4; *see also* ECF No. 26-2, Ex. H at 64-65). Defendant also filed a Petition for Preliminary Injunction, but Plaintiff discontinued the action on December 3, 2018 before a hearing on the Preliminary Injunction could be held. (ECF No. 26-1, pp. 4-5; *see also* ECF No. 26-2, Ex. H at 65-66).

On January 9, 2019, Defendant PRA filed a Petition for Possession in the Eminent Domain Action. *In re: Redevelopment Authority of City of Philadelphia*, Case No. 030401046, Control No. 10911572 (Phila. Ct. Comm. Pleas, April Term, 2003). The Honorable Edward C. Wright issued an Order on March 6, 2019 authorizing Defendant PRA to file a writ of possession for the Property, directing service of the writ by the Sheriff of Philadelphia County, and directing delivery of the Property to Defendant PRA "as soon as possible after service of the writ of possession." (ECF No. 26-2, Ex. A at 69). Two days later Plaintiff filed a motion for reconsideration of the March 6th Order that Judge Wright denied after a hearing attended by both Plaintiff and Defendant PRA. (ECF No. 26-1, p. 5; *see also* ECF No. 26-2, Ex. J). On July 3, 2019, Defendant PRA filed a Praecipe for Writ of Possession of the Property. *In re:*

*Redevelopment Authority of City of Philadelphia*, Case No. 030401046, Docket Entry dated July 3, 2019.

Prior to Defendant PRA filing its Praecipe for Writ of Possession, Plaintiff filed two actions against Defendant PRA in the Philadelphia Court of Common Pleas. First, on May 20, 2019, Plaintiff filed a contract enforcement action; Case No. 190502059 (the "Contract Enforcement Action"). (ECF No. 26-2, Ex. K). In his complaint, Plaintiff alleged that the Adams/Heller Email constituted an enforceable contract with the "housing and development" office within the City Council and that the Declaration of Taking filed by Defendant PRA, Case No. 030401046, was invalid because he was not afforded reasonable notice of a hearing on the matter or an opportunity to be heard. (ECF No. 26-2, Ex. K at 75-76).

Defendant PRA filed preliminary objections to the Complaint (ECF No. 18, p. 171); *see also In re: Redevelopment Authority of City of Philadelphia*, Case No. 190502059, Docket Entry dated June 10, 2019. In the Preliminary Objections, Defendant PRA argued that it has owned the Property since filing its Declaration of Taking on April 14, 2003 and Plaintiff has been a trespasser since that date. (ECF No. 18, pp. 172-73). Defendant PRA asserted that it sent notices to the Property demanding that Plaintiff vacate the premises from May 2009 through November 2018, but Plaintiff refused to comply and interfered with Defendant PRA's ability to enter the Property. (ECF No. 18, pp. 173). Finally, Defendant PRA asserted that it had never entered into an Agreement with Plaintiff and the only means by which it could enter into any type of "redevelopment agreement" required compliance with Pennsylvania's Urban Redevelopment Law, including, in part, obtaining plan approvals by the Defendant PRA's Board and the City of Philadelphia. (ECF No. 18, pp. 175). None of Plaintiff's allegations included

compliance with this law. (*Id.*). The Honorable Arnold L. New sustained the Preliminary Objections and dismissed the Complaint with prejudice. (ECF No. 26-2, Ex. M).

Second, on the same date, May 20, 2019, Plaintiff also filed an action to quiet title due to an alleged fraudulent conveyance; Case No. 190501957 (the "Quiet Title Action"). (ECF No. 26-2, Ex. L). His claims were the exact same as those set forth in the Contract Enforcement Action. (*Compare* ECF No. 26-2, K, *with* ECF No. 26-2, Ex. L). On June 10, 2019, Defendant PRA filed Preliminary Objections to this Complaint raising the same objections set forth in the Contract Enforcement Action. *In re: Redevelopment Authority of City of Philadelphia*, Case No. 190501957, Docket Entry dated June 10, 2019. By Order dated July 8, 2019, the Honorable Paula Patrick sustained the Preliminary Objections and dismissed the Complaint with prejudice. (ECF No. 26-2, Ex. M). Plaintiff filed a motion for reconsideration that is still pending. (ECF No. 26-2, Ex. N).

### 2. Federal Action

On November 29, 2018, Plaintiff filed the instant action in this Court under 42 U.S.C. § 1983 alleging, at base, an illegal taking of the Property by the Defendants based upon the alleged contract memorialized in the Adams/Heller Email. (ECF No. 2, pp. 1-4; ECF Nos. 3-4). Plaintiff seeks to quiet title to the Property in his favor and compensation for the work he did on the Property. (ECF No. 2, pp. 1-4; ECF Nos. 3-4). Contemporaneous with his filing of the Complaint, Plaintiff also moved for *in forma pauperis* status ("IFP status"). The Court granted Plaintiff IFP status, construed the Complaint (ECF No. 2), Motion to Accept E-mail as Proof of a Contract (ECF No. 3), and Exhibits (ECF No. 4) together and deemed the Complaint filed. Plaintiff subsequently filed a Motion to Amend Contract (ECF No. 9), which the Court denied

with leave to refile as a proposed amendment to the Complaint (ECF No. 14). Given Plaintiff's failure to comply with that Order and his *pro se* status, the Court elected herein to construe the Motion to Amend Contract as part of the Complaint.

On July 23, 2019, Plaintiff the Emergency Petition (ECF No. 17). He subsequently filed Preliminary Objections filed by Defendant PRA in Case No. 190502059 (ECF No. 18), a Notice of Information in Support of Request for Injunctive Relief; Cognizable Property Interest (ECF No. 20), and a Notice of Information in Support of Request for Injunctive Relief, Tucker Act, and Contract Violation (ECF No. 21). The Court has construed ECF Nos. 18, 20, and 21 together with the Emergency Petition.

On July 26, 2019, the Court issued an Order requiring Defendants to respond to the Preliminary Injunction if properly served with the Complaint, Summons, and Emergency Petition (ECF No. 19). On July 31, 2019 service of these documents was properly effectuated. (ECF No. 23). Defendants then filed the pending Motion to Dismiss (ECF No. 26), as well as an Opposition to the Emergency Petition (ECF No. 27). In response, and without leave of Court as required by this Court's Policies and Procedures,[12] Plaintiff filed a Notice of Information of Law in Opposition to Defendants' Opposition to the Preliminary Injunction (ECF No. 28) and an Opposition to the Motion to Dismiss. (ECF No. 29).

Plaintiff's Preliminary Injunction and Defendants' Motion to Dismiss are ripe and ready for adjudication.

---

[12] *See* U.S. District Judge C. Darnell Jones, II, Policies and Procedures: General Matters, Civil Cases, and Criminal Cases at 10.

## II.     STANDARD OF REVIEW

### A.  <u>Subject Matter Jurisdiction</u>

A Rule 12(b)(1) motion to dismiss challenges the existence of a federal court's subject matter jurisdiction.  Dismissal is appropriate where the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (internal quotation omitted).  Where subject matter jurisdiction is challenged, the plaintiff has the burden of persuading the Court that jurisdiction is indeed proper. *Id.* at 1409.

A challenge to subject matter jurisdiction may be either facial or factual. *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law." *Id.*  A court correctly assesses a Rule 12(b)(1) based upon a facial challenge by "consider[ing] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.*  A court may also review documents explicitly relied upon in the complaint as well as judicially noticed public records outside the pleadings. *In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999).  This is the same standard of review used in considering a motion to dismiss under Rule 12(b)(6). *Aichele,* 757 F.3d at 358.

Conversely, a factual attack is an argument that subject matter jurisdiction is lacking "because the facts of the case . . . do not support the asserted jurisdiction." *Id.*  When reviewing a factual attack, the court "may look beyond the pleadings to ascertain the facts," (*id.*), "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the

court then decides the jurisdictional issue by weighing the evidence." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006).

## B. <u>Failure to State a Claim</u>

Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). This inquiry requires courts to separate factual allegations from legal conclusions and determine whether the well-pled facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234-35).

## C. <u>Preliminary Injunction</u>

"A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Phar., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Where the preliminary inunction does not seek to preserve the status quo, but rather seeks

to impose providing mandatory relief, "the burden on the moving party to show an entitlement to relief is particularly heavy." *Punnett v Carter,* 621 F.2d 578, 582 (3d Cir. 1980).

## III.     DISCUSSION

Plaintiff has invoked this Court's federal question subject matter jurisdiction by raising a § 1983 claim for an alleged violation of his constitutional rights embodied in the Takings Clause of the Fifth Amendment, FOIA, the Quiet Title Act, and/or 28 U.S.C. § 2414, which concerns the apportionment of fees and expenses to prevailing parties in actions against the United States. Defendants' have challenged this Court's subject matter jurisdiction, though it is unclear whether their argument in support of dismissal is based upon a facial or factual attack.  As Defendants argue that this Court may not presume the truthfulness of Plaintiff's allegations – the standard for a factual attack – the Court will assume Defendants are raising a factual challenge.  (ECF No. 26-1, p. 8).  However, this basis of attack is improper because Defendants have not filed an Answer and thus have not controverted Plaintiff's allegations.  Thus, there is presently no factual dispute. *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358-359 (3d Cir. 2014).

Consequently, as Defendants have argued that Plaintiff's federal claims are without merit because: (1) he was not, nor has he ever been, the owner of the Property, and (2) the federal statutes cited to have no bearing on the action, the Court will construe the Rule 12(b)(1) portion of the Motion to Dismiss, in part, as one based on Plaintiff's lack of standing, *see Aichele*, 757 F.3d at 357 ("[a] motion to dismiss for want of standing is … properly brought pursuant to

Rule12(b)(1) because standing is a jurisdictional matter,") (internal quotation omitted), and in part, as a facial attack to subject matter jurisdiction.[13]

With that background, after reviewing Plaintiff's allegations and supporting exhibits, which were liberally construed in Plaintiff's favor as set forth in the factual recitation above, the Court will dismiss this action with prejudice due to a lack of subject matter jurisdiction. Plaintiff does not having standing to sue under the Takings Clause and all of his alleged federal claims are insubstantial attempts to obtain jurisdiction in this Court.

## A. The Court Does Not Have Subject Matter Jurisdiction Over Plaintiff's Claims

Section 1983 is not the source of any substantive right and it does not provide relief from state law torts. *See Berg v. Cnty. of Allegheny,* 219 F.3d 261, 268 (3d Cir. 2000). Thus, to state a claim under this section a plaintiff must allege a violation of a federal right, privilege, or immunity secured by the Constitution or the laws of the United States, by a state actor. § 1983; *see also Berg*, 219 F.3d at 268 n.3. Plaintiff has attempted to create a federal hook via the Takings Clause of the Fifth Amendment, FOIA, the Quiet Title Act, and/or 28 U.S.C. § 2414. The Court will address each of these laws in turn.

### 1. Takings Clause

The Fifth Amendment requires the payment of just compensation for private property taken for public use. U.S. Const. Amend. 5. "A ***property owner*** has a claim for a violation of

---

[13] Additionally, this Court, as a court of limited jurisdiction, has a continuing obligation to satisfy itself of its subject matter jurisdiction and must dismiss an action under Rule 12(h)(3) where such jurisdiction is found lacking. *Liberty Mut. Ins. V. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d. Cir. 1995).

the Takings Clause as soon as the government takes his property for public use without paying for it." *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2168 (2019) (emphasis added). Plaintiff has failed to establish standing to sue Defendants under the Takings Clause because he fails to plead facts from which the Court could reasonably infer that he ever owned, or had an ownership interest in, the Property.

To invoke a federal court's jurisdiction, a plaintiff must have a constitutional basis – or standing – to do so. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-1548 (2016). To establish standing, a plaintiff must have: (1) suffered an injury in fact, (2) traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a judicial decision in his favor. *Id.* at 1547. The injury-in-fact element "is often determinative." *Toll Bros. v. Twp. Of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). This requires the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

As an initial point, the Court will take judicial notice of the following documents: (1) state court filings submitted by Plaintiff and Defendant in Case Nos.: 030401046, 10911572, and 190501957, which were filed in the Philadelphia Court of Common Pleas; and (2) the search of the website for the Recorder of Deeds listing the owners of the Property since October 5, 1977. These documents, namely the Declaration of Taking, supporting deed for the Property, and list of Property owners as memorialized by the Recorder of Deeds demonstrate that Plaintiff has never owned or maintained an interest in the Property.[14]

---

[14] The Court will note that Defendants stated that:

Second, turning to Plaintiff's allegations regarding his ownership of the Property, he claims that he: (1) purchased for the Property for $66,000; and (2) had an agreement with the City of Philadelphia to obtain possession of the Property in exchange for maintaining the premises for some undefined period of time. First, these two alleged means of Plaintiff acquiring ownership of the Property facially contradict one another. Second, Plaintiff's allegations that he purchased the Property are contradicted by matters of which the Court has taken judicial notice, including: the record owners of the Property as memorialized by the Recorder of Deeds and the Declaration of Taking and its supporting documents, filed as required by Pennsylvania's Eminent Domain Code. However, the Court will set aside these contradictions and view each alleged means of acquisition independently.

As to the alleged purchase of the Property for $66,000, Plaintiff has provided no contract of sale, receipt for the purchase price, or other objective confirmation of his supposed purchase. Consequently, without more, the Court cannot reasonably infer that Plaintiff purchased the property for this alleged amount. With respect to the Adams/Heller Email constituting a "work to own" contract for the Property, Plaintiff has simply alleged his own legal interpretation of the email's importance. In actuality, the Adams/Heller email completely fails to satisfy the basic

---

[s]ince the filing of the Declaration of Taking, the [PRA] remains the record fee owner of the Property, [but] [w]ithout the [PRA's] knowledge, consent or permission, Plaintiff willfully and intentionally trespassed on the Property [and] has allegedly been performing repairs on the Property, and upon information and belief, has rented the Property to tenants…

(ECF No. 26-1, p. 3). The Court thus also construed Plaintiff's claims as arguably stating a claim for adverse possession. However, as Pennsylvania has a twenty-one-year statutory clock for adverse possession actions and Plaintiff concedes that Defendant PRA began sending notices for him to vacate the premises on May 27, 2009, the Court determined a potential claim of adverse possession is not feasible. 28 U.S.C. 1915(e)(2)(B)(ii); (*see also* ECF No. 4, p. 11; ECF No. 26-1, Ex. A).

elements of a contract. To form an enforceable contract under Pennsylvania law there must be a: (1) mutual manifestation of an intention to be bound, (2) sufficiently definite terms to be enforced, and (3) consideration. *Barton v. Hewlett-Packard Co.*, 635 F. App'x 48, 48 (3d Cir. 2015). These requirements apply to both written and oral contracts. *Gnames Advantage, L.P. v. CPC Assocs.,* Case No. 00-4032, 2002 WL 31750209, at *3 (E.D. Pa. Nov. 22, 2002) (applying Pennsylvania law). The Adams/Heller email does not contain any of this information. Moreover, to the extent Plaintiff's allegations are not that the email is the contract, but rather that it evidences the existence of an oral contract, Plaintiff has still failed to plead any terms of the alleged oral contract with sufficient definiteness to make it enforceable as a matter of law.

Consequently, as Plaintiff has failed to plead any facts from which the Court could reasonably infer he has ever had an ownership interest in the Property and the judicially noticed evidence of record demonstrates that Plaintiff was never a documented record owner of the Property, the Court holds that Plaintiff has failed to plead sufficient facts demonstrating he has standing to sue under the Takings Clause. As Plaintiff has failed to set forth any plausible allegations regarding his purported legally protected interest in the Property, he has also failed to establish that he suffered an injury in fact, traceable to Defendant PRA's filing of the Declaration of Taking, and redressable by a decision of this Court. Plaintiff has thus failed to invoke the Court's subject matter jurisdiction under this count and Plaintiff's claim is dismissed for lack of standing.

### 2. FOIA

The purpose of FOIA is to facilitate public access to documents maintained by *federal* government agencies. *See* U.S.C. § 551; *see also*, *Lazar v. Federal Bureau of Investigation*, 207

F. Supp. 3d 557, 562 (E.D. Pa. 2016).  As Defendants correctly argue, this statute has no bearing on this case as Plaintiff has not alleged that any federal entity maintained any documents related to his claims.  (ECF No. 26-1, p. 9).  Moreover, Plaintiff sought documents pursuant to Pennsylvania's Right-to-Know-Law, 65 P.S. §§ 67.101, *et seq.* – not FOIA.  Additionally, Plaintiff has not pled any allegations concerning a federal entity, whereby the Court might reasonably construe that, even though not expressly pled, a claim under FOIA might exist. Accordingly, Plaintiff has failed to plead sufficient jurisdictional facts to invoke the Court's subject matter jurisdiction under this count and his claim is dismissed as insubstantial and frivolous.

### 3.   The Quiet Title Act

The Quiet Title Act permits suits against the United States where the United States has claimed certain types of interest in real property.  28 U.S.C. § 2409(a).  Again, as Defendants correctly argue, this statute has no bearing on this case as Plaintiff has not claimed the United States has an interest in the real property at issue.  (ECF No. 26-1, p. 9).  Plaintiff appears to misconstrue the statute's applicability, taking any state government or municipality as being the functional equivalent of the United States – i.e. the United States of America.  As Plaintiff is incorrect and the judicially noticed evidence of record demonstrates that the United States has never had any interest in the Property, Plaintiff has failed to plead sufficient jurisdictional facts to invoke the Court's subject matter jurisdiction under this count and his claim is dismissed as insubstantial and frivolous.

### 4.   28 U.S.C. § 2412

As noted above, this section concerns the allocation of costs and fees to a prevailing party in actions against the United States. The Court agrees with Defendants that this statute is also inapplicable to this action as the United Stats is not a party to this, or any related action, and has no interest in the Property. (ECF No. 26-1, p. 9). Consequently, Plaintiff has also failed to plead sufficient jurisdictional facts to invoke the Court's subject matter jurisdiction under this count and his claim is dismissed as insubstantial and frivolous.

### B.  Plaintiff's State-Law Claims

Under Supreme Court precedent, "whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction." *Carlsbad Technology, Inc., v. HIF Bio, Inc*. 556 U.S. 635, 639 (2009). Stated differently, under 28 U.S.C. § 1367, a district court may, in its discretion, exercise supplemental jurisdiction pursuant to that section even if it has dismissed all federal claims. *Id.* Here, where Plaintiff has a final decision on the merits regarding the unenforceability of the Adams/Heller Email as a contract and Defendant PRA's legal ownership of the Property, *see infra*, pp. 20-21, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

### C.  The Complaint Fails to State a Claim

As stated above, Plaintiff's federal claims are all appropriately dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction and his state-law claims are properly dismissed pursuant to the Court's discretionary declination to exercise supplemental jurisdiction. Nevertheless, the Court will also briefly discuss Defendants' alternative request for dismissal under Rule 12(b)(6) to address their *res judicata* argument given the multiplicity of actions filed by Plaintiff in this Court and the Philadelphia Court of Common Pleas. Defendants argue that

the Contract Enforcement Action and Quiet Title Action preclude the present action in this Court under the doctrine of *res judicata*.  The Court agrees as to Defendant PRA only.

Under the doctrine of *res judicata*, or claim preclusion, a party is prevented from filing successive cases on a claim that has already been fully litigated and adjudicated on the merits. *Fonner v. Travelers Home & Marine Ins. Co.*, Case No. 14-3738, 2014 WL 5297993, at *4 (E.D. Pa. Oct. 15, 2014).  However, as the doctrine exists under both state and federal law, the Third Circuit has held that "the preclusive effect of a judgment is determined by the preclusion law of the issuing court . . . [therefore], as a general rule, state law governs the preclusive effects of a prior state court judgment." *Id.* at n.5 (*quoting Paramount Aviation Corp. v. Augusta*, 178 F.3d 132, 135 (3d Cir. 1999).

As the Contract Enforcement Action and Quiet Title Action were litigated in the Philadelphia Court of Common Pleas, the Court will apply Pennsylvania's *res judicata* law. Under Pennsylvania law, parties are prevented from re-litigating a claim with the same parties, or a party in privity with an original litigant where two actions share the same four conditions: "(1) the thing sued upon or for; (2) the cause of action; (3) the person and parties to the action; and (4) the capacity of the parties to sue or be sued." *Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) (citing *Bearoff v. Bearoff Brothers, Inc.*, 327 A.2d 72, 75 (Pa. 1974).  A sustained demurrer by way of preliminary objections and subsequent dismissal of a complaint constitute an adjudication on the merits with preclusive effect for *res judicata* purposes.

Plaintiff obtained final judgments on the merits as to the enforceability of the Adams/Heller Email as a contract and his entitlement to a quiet title action in his favor in the

Contract Enforcement Action and Quiet Title Action, respectively.  In each case Plaintiff at base claimed that the Adams/Heller Email constituted a contract with the City of Philadelphia/City Council entitling him to ownership of the Property.  In both cases, plaintiff claimed that Defendant PRA fraudulently interfered with this contract when it filed the Declaration of Taking and obtained ownership of the Property.  In both cases Plaintiff sought conveyance of the Property from Defendant PRA to himself.  And in both cases Defendants' preliminary objections were sustained and the complaints dismissed with prejudice.  Thus, as to Defendant PRA, only, the prongs of a *res judicata* analysis are easily met as Plaintiff has used the same operative facts to sue Defendant PRA in this action and is seeking the same relief; a judgment in his favor granting him ownership of the Property.  Consequently, dismissal of this action is also appropriate as to Defendant PRA because the claims raised herein are precluded by the doctrine of *res judicata*.  As Defendants Jackson and Labrum were not named in the identified state court actions, the doctrine is inapplicable to them.

## IV.    PRELIMINARY INJUNCTION

Given that the Court does not have subject matter jurisdiction over this action, the Court has no authority to hear the Preliminary Injunction and Plaintiff's claims are inherently unlikely to succeed on the merits. *See Kos Phar.,* 369 F.3d at 708.  Accordingly, the Preliminary Injunction is dismissed as moot.

## V.    CONCLUSION

For the foregoing reasons, the Court will dismiss all of Plaintiff's federal claims for lack of subject matter jurisdiction and declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.  The Court will note, that although its dismissal is based on a lack of subject

matter jurisdiction, it would have reached the same result under Defendants' alternative basis for dismissal pursuant to Rule 12(b)(6) for failure to state a claim.[15] Due to the Court's dismissal of this case for a lack of subject matter jurisdiction, the Preliminary Injunction is also dismissed as moot.

Finally, in light of this Court's Order dated November 2, 2010, Case No. 10-1104 (ECF No. 14), which prohibited Plaintiff from filing any more claims under 42 U.S.C. § 1983 without leave of court, and the resolved and pending litigation in the Philadelphia Court of Common referenced herein, Plaintiff shall seek leave of Court prior to: (1) making any additional filings under this case number unless he is filing an appeal; (2) initiating any claim against Defendants under a new case number; and (3) initiating any claim based on the underlying facts. An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II      J.

---

[15] Dismissal as to Defendant PRA would have been under *res judicata* and dismissal as to Defendants Jackson and Labrum would have been for a failure to plausibly plead an entitlement to relief.